NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRANCISCO PARTIDA, | No. C 08-00867 JF (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| GENTE DEL ESTADO DE CALIFORNIA, | |
| Respondent. | |

## INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 by a *pro se* state prisoner. For the reasons set forth below, the petition will be DENIED.

## BACKGROUND

In 2005, a San Francisco Superior Court jury found Petitioner guilty of sexual battery, forcible digital penetration, assault with a deadly weapon, and false imprisonment. The trial court sentenced Petitioner to a prison term of twenty-five years to life, to be served concurrently with a term of twelve years and eight months. Petitioner filed the instant federal habeas petition after being denied relief on direct review.

Order Denying Petition
ftp://156.128.38.212/DATA/Users/PRO-SE/SJ.JF/HC.08/Partida867.hc.md.wpd

As grounds for federal habeas relief, Petitioner alleges that (1) the trial court committed reversible error by denying Petitioner's motion to substitute new counsel; (2) the trial court committed reversible error by denying Petitioner's motion to admit the testimony of an expert witness; and (3) his counsel was ineffective in failing to object to the trial court's decision to not allow the admission of the expert testimony.

## STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively

unreasonable." *Id*. at 409.

## DISCUSSION

### I. Motion to Substitute Counsel

Petitioner claims that the trial court violated his Sixth Amendment rights when it denied his motion to substitute counsel. The state appellate court rejected this claim on grounds that Petitioner was equivocal in his desire to change counsel, voiced complaints about matters beyond counsel's control, and gave generalized, unspecific reasons for his motion. The state appellate court recounted the relevant events as follows:

> When the court asked [Petitioner] the reason for his dissatisfaction, he simply responded that there were "several," and he later said, "You know, there are so many reasons. I just can't tell you all of them." When prodded by repeated questions from the court, [Petitioner] said, "Well, one [reason] is I was going to get out in one year. [. . .] And I still don't know what is going on here. [. . .] I want to know why, why do they want to give me so much time? [. . .] I mean, I know I did hurt somebody. I know that. But it's not so much as to them giving me so much time because I never threatened, and I never used a gun or anything like that. And I always asked her for permission, and she always gave me permission." [Petitioner] said he wanted to know if his lawyers would "take care of this case properly," and he questioned why the prosecutor "want[ed] to give [him] so much time when [he hadn't] killed anybody or anything like that."
>
> [¶]
>
> With regard to his attorney, [Petitioner] said, "[I]f she is going to do a good job with me, then she may continue. But she can't keep bringing me all these lies. And we will have to see how it goes." When the court asked if this meant [Petitioner] would be satisfied with his current representation, he responded, "Well, I don't know. She has to take a look there, and see if she [is] really going to do a good job or not." The court then reassured him, "[Defense counsel] is one of the best attorneys here in this Hall of Justice. When she represents you, you are getting the best representation you could possibly get." In response, [Petitioner] said he didn't understand then why he was faced with "so much time," and why he hadn't been offered a better possible sentence, "like everyone else gets." Specifically, he wondered, "Why can't somebody get probation, or what is the question here with that? There is no forgiveness, for one, because you are not from here. So what is the system here really?" The court explained there are certain things an attorney cannot control and remarked that [Petitioner] had stated no good reason for being dissatisfied with his lawyer. In response, [Petitioner] complained again it was not fair "that they want to give me all that time for a mistake that was made when nobody was hurt or anything like that . . ." After confirming that [Petitioner] had nothing further to add, the court stated it had heard nothing to indicate [Petitioner] was being poorly represented and denied the motion.

(Ans., Ex. C at 4–5.)

When a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. However, the inquiry need be only as comprehensive as the circumstances reasonably permit. *King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir. 1992). The ultimate inquiry in a federal habeas proceeding is whether a petitioner's Sixth Amendment right to counsel was violated. *Schell v. Witek*, 218 F.3d 1017, 1024–25 (9th Cir. 2000). In other words, the habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [the criminal defendant's] constitutional rights in that the conflict between [the criminal defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Id.* at 1026. In determining whether the trial judge should have granted a motion to substitute counsel, the reviewing habeas court may consider the extent of the conflict, whether the trial judge made an appropriate inquiry into the extent of the conflict, and the timeliness of the motion. *Daniels v. Woodford*, 428 F.3d 1181, 1197–98 (9th Cir. 2005).

As the state appellate court concluded, the record shows that the trial court made adequate inquiries into the circumstances of Petitioner's motion to change counsel and that its ruling was fairly supported by the record. Petitioner gave only generalized, unspecific reasons for his dissatisfaction with defense counsel ("she can't keep bringing me all these lies"), voiced irritation with matters beyond counsel's control (such as the possible sentence he might face), and indicated that at most he was equivocal about counsel's performance. These facts are insufficient to show that there was a serious breakdown in the attorney-client relationship, let alone one degraded enough to violate petitioner's Sixth Amendment rights.

//
//
//

## II. Exclusion of Expert Witness

Petitioner claims that the trial court violated his due process rights when it denied his motion to call Patricia Perez-Arce, a neuropsychologist, to testify as an expert witness regarding his alleged cognitive impairment. According to Petitioner, such testimony was relevant to whether he formed the specific intent to commit the charged offenses. At the foundational hearing, Perez-Arce testified that Petitioner suffered from a "mild neuro-cognitive disorder that impaired his higher-order executive functions." However, Perez-Arce admitted on cross-examination that Petitioner's impairment was minor, "and not a primary mental disorder." She also conceded that Petitioner knew his actions were wrong and serious and that he would receive some punishment. The trial court denied the request to admit such testimony:

> The court observed [that] the evidence clearly indicated Partida knew what he was doing was wrong. Though he claimed he used the knife as a joke, and claimed he only entered the victim's apartment to take a shower, the court noted the jury could evaluate such testimony as lay persons and did not need the help of an expert. The court concluded Dr. Perez-Arce's testimony was not probative of any issue before the jury.

(Ans., Ex. C at 8–9.) The state appellate court rejected Petitioner's claim that the trial court's ruling violated his rights or constituted an abuse of discretion:

> Evidence pertaining to a defendant's mental disorder is admissible only to prove whether the defendant actually formed a specific intent [citation removed], yet, as the trial court observed, Dr. Perez-Arce's testimony offered nothing relevant on the specific intent issues before the jury. Her conclusions concerned Partida's inability to appreciate how much punishment he was likely to receive for acts that he admittedly knew were wrong. This evidence says nothing about whether Partida harbored a specific intent to sexually abuse the victim, or burglarize her apartment, or wield a weapon. Because Dr. Perez-Arce shed no light on Partida's specific intent to commit the charged crimes, her testimony was irrelevant, and the trial court did not abuse its discretion in excluding it under Evidence Code section 352.

(*Id.* at 9.)

The exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The defendant, not

the state, bears the burden to demonstrate such a violation. *Id.* at 47 (internal quotations and citations omitted). In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, a reviewing court balances five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. *Chia v. Cambra*, 360 F.3d 997, 1004 (9th Cir. 2004); *Drayden v. White*, 232 F.3d 704, 711 (9th Cir. 2000).

Petitioner has not shown that the exclusion of Perez-Arce's testimony violated his due process rights. The evidence lacked probative value. It did not support Petitioner's contention that he could not form the specific intent to commit the crimes and there was no indication that the jury needed an expert to enable it to understand the issues presented by the defense.

### III. Ineffective Assistance of Counsel

Petitioner claims that his defense counsel rendered ineffective assistance by failing to object to the exclusion of Perez-Arce's testimony. Although state appellate court did not address this claim in its written opinion, the claim is without merit. Defense counsel in fact made a formal motion to admit the testimony, and the trial court's denial of that motion was reviewed by the state appellate court. Petitioner then cannot show any prejudice from counsel's failure to object separately to the ruling.

### CONCLUSION

Petitioner has failed to show that there was "no reasonable basis for the state court to deny relief," *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011), that is, he has not shown that the state court's decision as to any of the above claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Accordingly, the petition will be denied.

A certificate of appealability will not issue. Reasonable jurists would not "find the

1 district court's assessment of the constitutional claims debatable or wrong." *Slack v.
2 McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from
3 the Court of Appeals.
4     The Clerk shall enter judgment in favor of Respondent and close the file.
5 **IT IS SO ORDERED.**
6 DATED: September __J__, 2011

                                                     JEREMY FOGEL
                                                     United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

FRANCISCO PARTIDA,

        Plaintiff,

  v.

GENTE DEL ESTADO DE CALIFORNIA,

        Defendant.

Case Number: CV08-00867 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 20, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Francisco Partida F22180
Corcoran State Prison
CSP COR 3C05-248U
P.O. Bax 3471
Corcoran, CA 93212-3471

Dated: September 20, 2011

                Richard W. Wieking, Clerk
                By: Jackie Lynn Garcia, Deputy Clerk